22-31-41 United States v. Moses I would like to address first the need issues, time permitting. I'll turn to the other issues in the case. The need convictions here, Your Honor, should be reversed because of insufficiency of evidence and also because of erroneous jury instruction. And additionally, because of the judge's erroneous exclusion of the employment contract. First, with regard to the insufficiency of the evidence, the Supreme Court in the Nieder case held that for mail fraud, a material misrepresentation is required. In fact, this court in the Oterari case held that the misrepresentation can consist either of an affirmative misstatement or an omission. With regard to the proof in this case as to the affirmative misrepresentations, they're virtually non-existent and a point that is essentially conceded by the government. The bulk of the need charges brought were not affirmative misrepresentations for the simple reason that they were on the need credit card utilized by Mr. Moses, and there was no representation made to the need entity with regard to that. The government case essentially on sufficiency rests on the omission branch of the fraud theory laid out by- Can't there be a duty to disclose arising from a fiduciary relationship that the executive director of a nonprofit has to the organization? I'm sorry. I think I was going where you were going. Can't there be a duty to disclose based on the fiduciary relationship between the executive director and the nonprofit organization he's in charge of? No, Your Honor, essentially no. I believe it's held both in the Mahaffey case, 2012 in our brief, which also cites the Newman case, that the government can in a criminal prosecution for mail fraud bootstrap itself to establish a fiduciary duty to disclose based simply upon a fiduciary duty. Mahaffey makes clear that it was a duty to disclose in that case was found in the fact that there was a policy, happened to be a written policy in that case, doesn't need to be a written policy, but some policy or practice that establishes the duty to disclose. More basically, we would say that if fiduciary duty alone were found to be sufficient, we would run into the problems which the court discussed in Skilling and found wanting in the mail fraud statute, which is based upon- The district court in our case, though, did instruct a specific obligation to disclose, right, and not just a general fiduciary duty. That's correct. The court decided- Okay, so doesn't that take you out of Mahaffey land? No, Your Honor, for the reason that the court charged professional contractual or legal duty would be sufficient. However, the court gave no definition to the jury, so the charge was hopelessly vague, nor did the government put in any evidence with respect to what the legal professional duty was, so that although the court did not say simple violation of fiduciary duty was sufficient, the court did fail and really thereby generated the same problem we have in Skilling of a hopelessly vague instruction. What was legal professional or legal duty? The jury was really left on its own with this amorphous charge. We asked the jury to charge with respect to along the lines of the Mahaffey case. The government simply failed to prove that there was any duty. The chief witness, one of the chief witnesses, the head of the board of the need, testified there was no requirement. Well, so you're basically asking us to find that because the need board didn't do a very good job of supervising him that he had no duty. I mean, is that the proposition of law that you're asking? No, Your Honor. We're holding simply that mail fraud law means what it says, that for a mission there has to be an obligation to disclose whatever the entity, whether it's General Motors or need, or they do a sloppy job, a great job. It doesn't make any difference. There still has to be a duty to disclose, and there was none here. And you can't have a fraud case without a duty to disclose. Okay, but how do you answer the question then about whether or not there was a common law duty to disclose? I don't know of any case that holds the circuit of holding an omission theory just based simply upon a common law duty to disclose. I know of no case that says that. And that would really run into the same problems as skilling. I mean, the vagueness of just general honesty and standards of decency that go along with fiduciary duty was exactly what Justice Scalia invaded against in his concurring opinion adopted by Justice Ginsburg in skilling. There has to be some – So how does your theory, though, not blow a pretty big hole in mail and wire fraud liability? I mean, you know, it sounds to me like even if a – under your theory that as long as the board was not very good at supervising them, that somebody who knew their transactions were criminal could get away with it. It's not criminal unless he knows there's a duty to disclose. Where does the duty to disclose come from? I find none in this case. I mean, there simply is none. There is zero evidence with respect to the government just didn't put it in because it didn't exist. Maybe it existed, but they didn't put it in. And I don't think the court can get around the holdings in Nieder or Terari. It's not a case whether conduct was good, not good. It's really a question of specific intent statute and under a specific element of material misrepresentation of mail fraud. And either the government met the test or they didn't meet the test, and they didn't meet it here. I would like, if I could, just briefly to turn to what we think is an extremely important issue, and that's the exclusion of the evidentiary contract. The judge simply erred in keeping out the employment contract. Under the employment contract 2010, Moses was granted a percentage of all revenue brought in, 2.5% bonus. He brought in millions. He was the only person bringing in money to the organization. The judge excluded it. She erred in two respects. She misunderstood or mischaracterized the standard of the low threshold that is required on the authenticity finding. First, she totally misread the testimony of the witness, Tiffany Benjamin, who said three times, it's true she equivocated, but she said three times that the document that we sought to put into evidence was the document that was shown to her in 2010, and that she signed this document. In and of itself, this was sufficient basis to meet the low threshold. Additionally, the corroborating circumstantial evidence, the contemporaneous finding of this document, along with documents that were found unchallenged, unchallenged by the government, was found in a file together with an amendment of that employment contract in 2011, which matched in many respects the document here. So we submit the judge's error, and that error was highly prejudicial because we submit it could have led the jury to a finding. The government conceded, in fact, that if that evidence came in, Moses would have been entitled to establish a defense against the need expenditures. So on both of those bases, with respect to the evidentiary error, we submit that the court simply mistaken, mischaracterized the testimony. In early respects, the judge indicated that she was paying attention to the circumstantial evidence, and then the judge erroneously ruled against the holding of this court in Tin Yat-chen that circumstantial corroborating evidence cannot be used in determining the authenticity issue, and totally ignored what we submit is the powerful corroborating evidence with respect to the document, the employment contract. To be specific, there were three pieces of corroborating evidence. The first- Mr. Whitey, it's rebuttal time now. I'm sorry. I'll preserve the rebuttal. Thank you, Mr. Haynes. We'll hear from the government. May it please the court, Richard Resnick, I was the trial attorney for the government in this case, and I'd like to address the couple issues that counsel raised, one with respect to the statement that the government conceded that there was no affirmative misrepresentations. That's not accurate. The case had numerous affirmative misrepresentations to show that there was a scheme to defraud. You don't even have to rely on the omission theory, but I'll get to that in a second. But with respect to affirmative misrepresentations, the defendant, in an email that was not in our brief, but I'd like to let the court know about it, it's at Government Exhibit 561. With respect to affirmative, when the defendant's sister, Margaret Moses, was the bookkeeper for need, Regina Seabrook, the chairman of the board, asked who that individual was. Now, that individual, the bookkeeper, is the only one that could have caught this fraud because that bookkeeper is the only one that sees the credit card statements where all those personal expenses were- Are you pointing us to an affirmative misrepresentation that's not briefed? No, this one's briefed. Yeah, it's not briefed, Your Honor, and so I just wanted to mention that. Can you give us a record citation then or an appendix or something that helps us to- Yes, it's in Regina Seabrook's testimony. There is a footnote in our brief, I believe, that mentions it. It's in Appendix 2473 to 2475. Thank you. And it's probably the most significant affirmative misstatement because, again, as I'm stating, the bookkeeper is the only one that could catch this fraud because she sees the credit card statements and would see the personal expenses. When she was introduced to the board chairman, Regina Seabrook, she wasn't identified as being the defendant's sister. The defendant lied to her. Mr. Moses didn't tell the board chairman that she was not an independent bookkeeper, that she was not inexperienced as a bookkeeper, and this was a critical misstatement that the defendant made to the board chairman that would have raised a red flag that no one is checking on the credit card statements. There was other affirmative misrepresentations. What did he say? I thought I heard you say a lot of things he didn't say. Oh, he- About affirmative misstatements. He identified her as someone other than his sister. Another affirmative misrepresentation is the fact that when you use the credit card itself, you're representing the corporate credit card, that that corporate credit card is being used for business purposes, and by swiping that credit card and using it for personal expenses, you're representing affirmatively that you are using that correctly when you're not. And then when you write the check, the corporate check, and you sign the check like Mr. Moses did to pay off the corporate credit card, that is also an affirmative misrepresentation that what is on that credit card statement, that business credit card statement, was in fact business expenses. And there's also other affirmative misrepresentations. In some of the accounts 21 and 22, there are false per diem requests. There's a false invoice with respect to a reimbursement for a car expense. So there are affirmative misrepresentations. With respect to the omission, the defendant acknowledged that he had a duty to disclose. In Government Exhibit 561, which is not referenced in our brief, but it came in through Shirley Boone at Appendix 860 through 861, it's an e-mail where the bookkeeper at the time, who was independent and was questioning Mr. Moses on some of the expenditures, was asking him specifically about this purchase of a timeshare that Mr. Moses has now been convicted of where he used $19,000 to purchase a personal timeshare. I understood your friend's argument not to be that he didn't have a duty to disclose, but that that's not enough for Milford. Well, I think what he was arguing in his brief was that there was no duty to disclose and he didn't know he had a duty to disclose. And I'm saying he had a professional duty. He was a fiduciary of a not-for-profit, an executive director, wasn't an employee, and basically when he was asked about a purchase that was illegal, he lied to this individual in an e-mail and said, Hi, Deb, I saw your e-mail. Please know that I informed the board before I did it. So basically telling the bookkeeper that, Hey, look, I told the board I did this, which is not true. It was a lie. But acknowledging that anything significant, he had a duty to disclose to the board, as well as Miss Seabrook testifying, the board chairman, that she expected that the executive director would have advised the board of any significant events. Now, with respect to also the jury instructions, I mean, the jury instructions did in fact correctly instruct the jury. Basically, the judge used the standard SANS instruction, which said that the scheme to defraud is alleged to have been carried out by making false and fraudulent statement representations, claims, and documents. So the jury was instructed properly that you needed material misrepresentations. And based on the facts of the case, they found, obviously, that there were material misrepresentations, either from affirmative misrepresentations or from omissions, where he had a duty to disclose. Now, with respect to the employment contract, the employment contract, there was a lot of argument and briefs on that issue. Defense counsel tried to get it into trial through a witness who was able to identify her signature on the last page, but was not able to identify that the other three pages were, in fact, the same as what she signed back in 2010. And based on that, the judge said that wasn't enough to come into evidence. There was no record custodian. There was nobody to say where that document was maintained or found. The district court has broad discretion in determining whether or not something is authentic. Yes, yes. And the judge went above and beyond to try to get this thing to see if it could be authentic, and defendant did not meet its burden to show what it purports to be it was. So can you recite the hallmarks of fabrication that you think were underlying the district court's determination? Yes. First of all, the contract was a 2010 alleged contract. There was some manipulation in the typing. The fact that if you had an employment contract with this company that entitled you to some money that you think you were entitled to, not one person at need knew about this contract. The chairman of the board was never advised that he had this employment contract, nor was the chief of staff, Shirley Boone, had worked there for years under Mr. Moses. You would think that if someone was owed money, a lot of money, under an employment contract, they would have notified the board that, hey, I've got this employment contract. I'm owed money. Second of all, there was nothing on the books or records of the company saying that Mr. Moses was owed money. So we have an employment contract, and Mr. Moses is trying to say should have came into evidence, which would have then been a defense to him swiping a credit card and taking money out of the corporation by using a corporate credit card with no one's knowledge to pay for personal expenses. So he's saying, I have an employment contract. I'm owed money. Instead of telling anybody that I'm owed this money, I'm just going to start taking the money out with a credit card using the corporate credit card for personal expenses. So those are some of the additions of fraud. No one else had an employment contract that worked for need. Also, I think very importantly, it expired in 2013. The conduct here started in late 2014, and most of it occurred in the years of 2017 and 2019. So I think I addressed the two issues that defense counsel brought up. The government would respectfully request that the court affirm the 14 of 28 counts that the defendant is challenging, as well as the reasonableness of his sentence. Thank you. Thank you, counsel. Mr. Hick? On the affirmative misrepresentation, the government is talking out of both sides of its mouth. Its brief states at page 60, here the government does not allege that the schemes involve false or misleading statements to the need board. There are a few affirmative statements, as we say in our brief. The bulk of the case, as I said in my initial argument, consists of fraud by omission. We deal with the specifics of the six affirmative misrepresentation out of hundreds the government raises in our brief. With respect to the duty to disclose, the government says, oh, we find a duty to disclose, number one, because Moses told an employee that the timeshare should be placed on the books. That doesn't establish that there was a duty to disclose. In hundreds of transactions in one instance, Moses, with respect to that, when asked about it, said to put it on the books. Regina Seabrook's testimony, the president of the board, is the opposite of what the government said. Cross-examination by me of Seabrook at trial established specifically, she ran from saying that she has any obligation to look over the expenses or approve the need expenses. She said, no, no, no, no. I only approve requests for checks for reimbursement. As to Moses' expenditure and the need, I have nothing to do with that. And she was quite clear that the board had no requirement with respect to approval by Moses. So where is the approval of those expenditures? So where in does the government find a duty to disclose? We're talking about defendant's state of mind. We're talking about really due process vagueness under skilling with regard to a specific duty to disclose. And the government is hanging its hat on the fact that the expenditures were made without really fulfilling the obligation of the duty requirement. With respect to the contract, the government's argument as to it can't get around, Shirley Boone was not on the board of directors when the contract was signed in 2010. Neither was Regina Seabrook.  Mr. Resnick made jury arguments. But Tinyat Chen said reliability and weight is not to test on 901 authenticity. It's a very low bar with regard to threshold. And we powerfully exceed at the bar with respect to authenticity. The corroboration documents. 2010, there is a board minutes which the government doesn't contest but say there is an employment contract. 2011, there is board minutes uncontested by the government which say the contract is being amended. Wasn't the concern, especially because Ms. Benjamin said that she remembered signing some kind of contract, whether or not it was this one, right? The issue wasn't, I mean, how would you respond to the abuse of discretion standard in that scenario? Benjamin testified, I think it's 4846, that the document that was shown to her on the screen, 5515, she confirmed that she said this is the document shown by the FBI. And in the statement, she said that someone showed her this document, explained it to her, and she skimmed through it and she signed it. That's her testimony. She says that. And then she says two other times she reaffirms that. It's true. She goes different places with the testimony. But this is not a, those are weight and credibility arguments, and the government could surely make those in front of the jury. But this is authenticity. Right, and the district court is the one that gets to decide whether or not it's enough, right? And it's a question of whether there's abuse of discretion, of course. I mean, but with regard to, when a witness says three times this is the document that was shown to me, and then in addition, the corroboration of the document, the 2011 employment contract found in the same file, which the government doesn't contest, the amendment matches the provisions of the 2010 contract, which is in dispute. And not only that, Mr. Moses was paid in accord with provisions of the 2010 contract, for example, with regard to the cell. So I agree with Your Honor. I mean, these are certainly arguments on weight and credibility if you were arguing in front of the jury. But the authenticity is really a low bar, and framework of letting the defendant present his constitutional defense, that low bar was more than exceeded here by the employment contract on, number one, the Tiffany Benjamin testimony and the corroborating documents. And the judge, in her final opinion, erred by limiting considerations, said I have to decide this case based on only the testimony of Tiffany Benjamin, and essentially ignored the corroborating circumstantial evidence. And Tin-Yat-Chin, this court, found the circumstantial evidence to be very strong and more than met the bar, the low bar for authenticity. It's a powerful fact. I mean, no wonder the government fought tooth and nail to keep it out, because we think it could turn the case around. And Moses was entitled, more than entitled, on the basis of the presentation made at trial to allow this document to be considered by the jury. Thank you, counsel. Thank you both. We'll take the case under advisory.